McIlvaine, J.
We are unanimous in the opinion that there was error in the judgments of the courts below.
The question is : Were the defendants in error liable to-the plaintiff in error, under their express covenant .to pay rent during the term, for rents which accrued after they had respectively assigned all their interests in the leasehold estate, and after the lessor had accepted rent from their assignees ?
The affirmativé of this proposition, as a rule of common, law, has been clearly and firmly settled by numerous adjudications in the courts of common law, both in England arid our own country. The only case to the contrary was decided in 1651 (Whitway v. Pinsent, Styles, 300), which has never since been approved or followed.
In our own state, the rule as above stated has been fully *471 recognized and enforced in carefully considered cases. Sutliff v. Atwood, 15 Ohio St. 186, decided by this court and Harmony Lodge v. White et al., 80 Ohio St. 569, recently decided by the Supreme Court Commission.
The liability incurred by such express covenant does not. depend upon any privity of estate between the lessor and the lessee; but exists by reason of the privity of contract between them. The ground upon which such obligation rests is essentially different from that of the liability to-pay rent, where the covenant is only implied. Where rent-is reserved in the deed of lease, without any express covenant on the part of the lessee to pay, the liability is-founded on an implied covenant, and the implication arises on the ownership and possession of the leasehold estate ? in other words, it depends solely upon the privity of estate between the reversioner and the tenant. Therefore, it matters not, as between lessor and lessee, where the covenant is express, whether or not the privity of estate between them has been severed by an assignment of the term; so long as the privity of contract exists, the liability of the lessee continues.
And, again, while such express covenant imposes an obligation on the covenantor, and binds his personal representative having assets, to pay the rent during the term, it also-inheres in the estate as a covenant real, and binds the assignee of the term, by reason of his privity of estate, to-pay the rent accruing during his ownership and possession of the estate; so that, after an assignment of the lease, the-lessor has a double and several security for the payment of his rent, either or both of which he may pursue until satisfaction is obtained. Therefore, the receipt of rent from the assignee of the lessee does not amount to a novation or release of the lessee, but is the assertion of a right which accrued to the lessor as an incident to the assignment.
Nor does the duration of the term at all affect the obligation of such express covenant. By the common law, the-liability of the lessee, on his express covenant to pay rent during the term, attached to him and his personal repre *472 ■sentative, as long as assets remained in bis hands, whether -the term of the lease was for one or many years, with or without a-covenant for renewal, or in perpetuity. Numerous cases are reported, where the lease was perpetual or renewable forever, in which the same liability was found as in leases for a short term of years.
Indeed, it seems, from the nature of the covenant itself, no distinction can be made on account of the duration of ■the term; it is a personal engagement to pay rent during ■the term; as long as assets can be found, the obligation may be enforced. The law imposes no limit upon the time within which covenants to pay money must mature. This is left entirely to the discretion of contracting parties.
It then only remains to be shown that our legislation, in respect to leasehold estates, has not modified the rules of the common law as above stated.
By the common law,, leasehold estates were regarded as •chattels—chattels real to be sure, but nevertheless subject to the rules relating to chattel property; but by statute, as ■early as 1821, leaseholds renewable forever were made ■subject to judgments and executions “as real estate,” and in 1837 they-were subjected to the same laws of descent .and distribution “ as estates in fee,” and such has continued to be the state of our statute laws ever since. Now, it is •contended that, by force of this legislation, such estates are no longer chattels; that the creation of such an estate in 'lands is equivalent to an absolute transfer of the fee, and, therefore, the common law incidents of leasehold estates are abrogated. Such results do not follow such legislation. To the extent that leasehold estates have, by statute, been ■subjected to the rules which govern estates in fee, of course the rules of the common law, in respect thereto, have been .abrogated ; but beyond this, the common law continues to furnish the only rules for the guidance of courts in determining the rights of parties in relation to leasehold estates. And it is quite clear to our minds that there is nothing expressed in these statutes, and nothing implied, that modifies *473 the common law in respect to the rights or liabilities of the parties to this record. As to these lands, the plaintiff in error was lessor and reversioner, and defendants in error, lessees and owners of the term; and the annual compensation payable to the lessor for the use of the premises during the term, is rent, and nothing more.
But, if it were otherwise, and the statute had declared the estate which passed to the defendants to be “ a fee simple,” the change of name would not have changed its nature; and if the annual compensation is to be called “purchase money,” still the defendants in error would be liable upon their express covenant to make payment until released by the voluntary act of the plaintiff in error; and there is no fact stated in this record which would show a release from the obligation of the covenant.
It was conceded in argument, that the courts below as-framed to follow the rulings of this court in the case of Worthington v. Hewes & McCann, 19 Ohio St. 66. We regret to say that we are unable to .approve all that was said in that case by the learned judge who prepared the opinion; ■and yet, we do not wish to be understood as overruling that decision. That was an action by the assignee of the reversion against the assignees of the term [the liability •of the lessee upon his express covenant to pay rent during the term was not in issue], and it may well be doubted, whether in an action, by the assignee of the reversion against the lessee after an assignment of all his interest, a recovery .could be had upon his express covenant, there being no privity either of personal contract, or of estate, between the parties. See Crawford v. Chaponan, 17 Ohio, 449; Sutliff v. Atwood, 15 Ohio St. 1866.
But however that may be, the terms of the lease in that case were essentially different from those in this case. That was a lease for ninety-nine years renewable forever, with a covenant to pay rent during the first fifteen years at a fixed sum annually. It further contained a covenant that at the end of the first period of fifteen years, and of each succeeding period of fifteen years, the leased premises, *474 without reference to the improvements “should be appraised and valued by three intelligent and disinterested men to be mutually chosen or agreed to by the said parties, or in case of disagreement, then to be appointed by the judges of the court of common pleas of the State of Ohio within and for the county of Hamilton for the time being upon the application of either of said parties,” the lessee for himself, his personal representatives and assigns covenanting that, for and during the continuance of each of said successive terms of fifteen years, he and they should render yearty as an annual rent, etc.
Now, the main question in the case was, who was the proper party to represent the owner of the leasehold estate in the re-adjustment of the rents at the end of a period of fifteen years ? The lessee or his assignees ? In determining this question the court looked to the relations and interests which the respective parties had in the subject matter, and concluded that the assignees in possession were the proper parties to act in the re-appraisement. In construing the lease for the purpose- of settling this question, the court found that the lessee, after the assignment of the term, was not liable under that particular contract for the payment of rents after a re-appraisement. The correctness of the construction of that lease is not submitted to us in this case; but it does become our duty to say that the proposition in the syllabus of that case, namely : “After an unconditional assignment by the lessee,' he is not liable for future rents, etc.,” was intended to be limited and was in fact limited to a lease like the one then before the court, in which the force of the express covenant to pay rent, by construction of the whole instrument, was modified and limited by other covenants.
It is enough, however, for us to say here, that we now disapprove of only so much of the opinion in that case as expresses views irreconcilable with the doctrine laid down in the decision of the case before us.
Judgments below reversed, demurrer to original petition *475 overruled and cause remanded to the common pleas for further proceedings.